

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable G. Simmons
County Auditor
Henderson County
Athens, Texas

Dear Sir:

Opinion No. O-3191
Re: (a) Duty of county health
officer to attend prison-
ers in the county jail,
and his compensation;
(b) Liability of county
for fee of physician other
than county health officer
when called by sheriff to
attend prisoner in county
jail.

This will be in reference to your letter of February 18, 1941, requesting the opinion of this department upon the following questions:

"1. Is it the duty of the County Health Officer to attend prisoners in the county jail who are ill or injured and if so what compensation should be allowed.

"2. Is the county liable for the fee of a physician, other than the County Health Officer, when he has been called by the Sheriff to attend and minister to a prisoner confined in the county jail."

Articles 4423 and 4427, of Vernon's Annotated Civil Statutes, read as follows:

"Article 4423. The commissioners' court by a majority vote in each organized county shall bien-nially appoint a proper person for the office of county health officer for his county, who shall hold office for two years. Said county health of-ficer shall take and subscribe to the official oath,

Honorable C. Simmons, page 2

and shall file a copyy of such oath and a copy of his appointment with the Texas State Board of Health; and, until such copies are so filed, said officer shall not be deemed legally qualified. Compensation of said county health officer shall be fixed by the commissioners court; provided that no compensation or salary shall be allowed except for services actually rendered." (Underscoring ours)

"Article 4427. Each county health officer shall perform such duties as have been required of county physicians, with relation to caring for the prisoners in county jails and in caring for the inmates of county poor farms, hospitals, discharging duties of county quarantine and other such duties as may be lawfully required of the county physician by the commissioners court and other officers of the county, and shall discharge any additional duties which it may be proper for county authorities under the present laws to require of county physicians; and, in addition thereto, he shall discharge such duties as shall be prescribed for him under the rules, regulations and requirements of the Texas State Board of Health, or the president thereof, and is empowered and authorized to establish, maintain and enforce quarantine within his county. He shall also be required to aid and assist the State Board of Health in all matters of local quarantine, inspection, disease prevention and suppression, vital and mortuary statistics and general sanitation within his county; and he shall at all times report to said State board, in such manner and form as it shall prescribe, the presence of all contagious, infectious and dangerous epidemic diseases within his jurisdiction; and he shall make such other and further reports in such manner and form and at such times as said State Board shall direct; touching on such matters as may be proper for said State board to direct; and he shall aid said State Board at all times in the enforcement of its proper rules, regulations, requirements and ordinances, and in the enforcement of all sanitary laws and quarantine regulations within his jurisdiction." (Underscoring ours)

Note that under Article 4427 the county health officer is required to "perform such duties as have been required of county physicians, with relation to caring for the prisoners in county jails * * * and other such duties as may be lawfully required of the county physician by the commissioners' court and other officers of the county, and shall discharge any additional duties which it may be proper for county authorities under the present laws to require of county physicians; * * *"

Of course, as you know, the articles quoted above are a part of the Act of the First Called Session of the Legislature of 1919, page 340, abolishing the office of county physician and creating the office of county health officer. What duties could lawfully be required of county physicians? Could they be required to attend prisoners in the county jail? This was the precise question before the Supreme Court in the case of Galveston County v. Duole, 91 Tex. 635, 45 S.W. 798. There the commissioners' court had elected the appellee county physician and among other duties set forth in his appointment he was required to "give medical attention to the prisoners at the jail." The question was the authority of the commissioners' court to require these duties of appellee and our Supreme Court said:

"To the first question propounded, we answer that the commissioners' court of Galveston County was authorized to make the contract for medical services to be rendered to paupers and prisoners for whose care and support the county was required to provide."

The authority there was predicated upon the following statute (now Article 1037, Code of Criminal Procedure):

"Each county shall be liable for all expense incurred on account of the safe keeping of prisoners confined in jail or kept under guard, except prisoners brought from another county for safe keeping, or on habeas corpus or change of venue; in which cases, the county from which the prisoner is brought shall be liable for the expense of his safe keeping."

The county's duty with respect to its prisoners was more firmly fixed by an Act of the Legislature of 1923 (now Article 1040, Code of Criminal Procedure) providing, in part:

Honorable C. Simmons, page 4

"For the safe keeping, support and maintenance of prisoners confined in jail or under guard, the sheriff shall be allowed the following charges:

* * * *

"3. For necessary medical bill and reasonable extra compensation for attention to a prisoner during sickness, such an amount as the commissioners court of the county where the prisoner is confined may determine to be just and proper."

You are accordingly advised that it is the duty of the county health officer at the request of the commissioners' court, the sheriff or other proper authorities, to attend and render medical assistance to prisoners confined in the county jail. Under Article 4423, supra, he may be allowed any reasonable compensation by the commissioners' court for any services actually rendered.

Your second question is with respect to the liability of the county for a private physician's fee when called by the sheriff to minister to a prisoner confined in the county jail.

It is difficult to answer your question categorically. The liability of the county for the fee of a physician other than the county health officer must depend upon the circumstances involved in each particular case. Important considerations will be the availability and willingness of the county health officer to perform the duties required, the urgency of the services, and the reasonableness of the fee.

Assuming the failure or refusal of the county health officer or his unavailability and that medical attention is urgently needed by a county prisoner, you are advised that the sheriff may bind the county for a reasonable physician's fee.

We had occasion to consider a similar question in Opinion No. O-212. We were there concerned with the liability of the State for necessary hospitalization and medical services rendered a prisoner while in the custody of a member of the Texas Highway Patrol. In speaking of the State's duty to prisoners, we said:

Honorable C. Simmons, page 5

"It is the well established general rule that the duty a sheriff or other peace officer owes to the state or to the public to safely keep a prisoner committed to his custody and deliver him over to the proper authorities at the proper time, is no more compulsory than is the duty he owes the prisoner himself to exercise reasonable and ordinary care to protect his life and health. These two duties are co-extensive and arise by virtue of the custody of such prisoner by such officer under criminal process. 21 R. C. L. p. 1173 (Prisons and Prisoners, Sec. 10). Logan v. U.S., 144 U.S. 263, 12 Sup. Ct. 617; 36 L.Ed. 429; Ex Parte Jenkins, 58 N.E. 560; State vs. Gobin, 94 Fed. 48."

Moreover, we pointed out that the critical condition of a prisoner may require that medical attention be rendered by others than those usually required to perform such services, saying:

"As illustrative of this discretion to waive statutory formalities in emergencies, we cite the case of Lamar vs. Pike County, 30 N.E. 912, holding that a county was liable for medical services rendered by a physician summoned by the jailer to attend a prisoner in an emergency not admitting of the four hours' delay necessary to procure the attendance of the secretary of the board of health, who resided twelve miles away from the jail, notwithstanding the statute provided that the latter should render such medical services as were required by prisoners. The court said:

"'In the case before us it was the duty of Smith, the jailer in charge of the prisoner and acting for the sheriff, to summon a competent physician under the existing emergency to treat the prisoner, and thereby save his life, if such could be done. It would have been inexcusable neglect on the part of the jailer to have waited four hours to summon the secretary of the board of health, twelve miles distant, when the necessary medical aid could be obtained speedily and near at hand, and was essential to save the life of the prisoner . . . . We cannot believe that the

law intended where a man was in jail, and in need of medical service under the emergency existing in this case, where the board of county commissioners had appointed a secretary of the board of health, whose duty it was in such cases to render such medical assistance, but whose residence was so remote from the county jail that he could not be procured in time to render the aid needed, that the prisoner should be left to suffer and perhaps die, and that the county would not be liable for the services thus rendered by a physician under the employment of the jailer having the prisoner in charge.'"

Certainly a county owes no greater duty to its paupers than to its prisoners, and long ago the Texas Court of Appeals held in Monghon & Bisson v. Van Zandt County, 3 Willson, Civ. Cas. Ct. App., Section 198, that a county was liable for medical services rendered a pauper at the request of the county judge and a member of the commissioners' court. The court said:

"Counties are required to provide for the 'support' of their paupers. 'Support,' as used here, means more than supplying them with food and clothing and a house to stay in. It means all that is necessary to bodily health and comfort, and especially does it include proper care, attention and treatment during sickness. This is a supreme obligation of humanity, independent of any statutory mandate. And where adequate provision has not been made by the commissioners' court to furnish these prime necessities of life, the county judge, being the principal representative of the county, or any other member of the commissioners' court, can, by contract, bind the county in any reasonable sum necessary for the support of a pauper. Without a previous contract to that effect, if in case of sickness a physician should give his professional care and attention to a pauper, an implied contract to pay for such services a reasonable compensation would exist on the part of the county. In this case there is no question but that the services rendered

by appellants were necessary, and were well and skillfully performed, and that the amount claimed therefor is reasonable. Such being the case, it is the duty of the county to pay the amount claimed; wherefore the judgment is reversed, and judgment is here rendered for appellants against appellee for the amount claimed and costs."

It is therefore our considered opinion and you are advised that when the county health officer is unwilling or unable to attend and a private physician is called by the sheriff, the county is liable for reasonable fees resulting from his ministration to a county prisoner urgently in need of medical attention.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

James D. Smullen
Assistant

JDS:js

APPROVED MAR 5, 1941

...NEY GENERAL OF TEXAS

